IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02539-WYD-MJW

JOHN JACQUAT,

    Plaintiff,

v.

HUB INTERNATIONAL INSURANCE SERVICES, INC., a California corporation,

    Defendant.

# ORDER

## I. INTRODUCTION

THIS MATTER is before the Court on the Plaintiff's Motion for a Determination of Questions of Law (docket #29), filed February 22, 2010. The Plaintiff's motion requests a determination that Colorado law will apply to the enforceability and construction of the "Non-Solicitation Agreement" between the parties and the other claims and counterclaims that have been asserted. On March 18, 2010, Defendant filed its response. On April 7, 2010, Plaintiff filed a reply.

## II. BACKGROUND

John Jacquat ["the Plaintiff"] began working as an insurance broker for Talbot Agency ["Talbot"] in August 2005. The Plaintiff lived in Colorado, and was hired by Talbot to primarily service Colorado customers. His principal place of employment was Denver, Colorado. The Defendant, now known as Hub International Insurance Services, Inc., ["Hub" or "the Defendant"]

acquired Talbot in July 1, 2004 and operated Talbot as a subsidiary when the Plaintiff began his employment with Talbot. Talbot was a New Mexico corporation, and its principal place of business was New Mexico.

In August 2005, at the initiation of his employment, the Plaintiff entered into a Non-Solicitation Agreement with Talbot restricting his ability to solicit business from Talbot's customers or use confidential information he obtained through his employment. In the instant case the Defendant seeks the enforcement of the Non-Solicitation Agreement, which it has every right to do as Talbot's successor in interest.[1] The relevant portions of the Non-Solicitation Agreement are reproduced below.

Paragraph 3 of the Non-Solicitation Agreement contains a restriction on the solicitation of Talbot's customers for two years following the termination of the Plaintiff's employment and states as follows:

> Solicitation Following Termination. (a) Following the termination of the term of employment with TA ["Talbot Agency"], regardless of the cause thereof, and continuing **during the period which expires on the second anniversary of such termination, Employee shall not (a) solicit, contact, interfere with, re-write or divert any customer served by TA during the period of the Employee's employment** hereunder or unfairly compete for the business of any such customer... It shall be Employee's obligation to affirmatively determine whether a potential customer is or was served by TA during the relevant time periods.

(Non-Solicitation Agreement § 3) (emphasis added).

Paragraph 5 contains an acknowledgment that the restrictions in paragraph 3 are reasonable in scope and states as follows:

---

[1] As of January 1, 2006, Talbot's name was changed to "Hub International Southwest Agency Limited." As of December 31, 2008, Hub International Southwest Agency Limited was merged into Hub International of California Insurance Services, Inc. As of May 12, 2009, Hub International of California Insurance Services, Inc. changed its name to "Hub International Insurance Services, Inc." Thus, the Defendant Hub is the successor of Talbot, the original party to the Non-Solicitation Agreement.

> Acknowledgment. **Employee acknowledges that the restrictions** set forth in paragraphs 1, 2, and 3 **are reasonable in scope** and essential to the preservation of TA's business and proprietary properties and that the enforcement thereof will not in any manner preclude Employee, in the event of Employee's termination of employment with TA, from becoming gainfully employed...

(Non-Solicitation Agreement § 5) (emphasis added).

Paragraph 6 states that the agreement intends to protect Talbot's trade secrets and to prevent unfair competition. It also expresses the parties' intention to conform with the relevant law and states as follows:

> **Both parties acknowledge and agree that they have attempted to limit Employee's ability to solicit clients of TA only to the extent necessary to protect TA from unfair competition and the disclosure of its trade secrets.** However, the parties hereby expressly agree and contract that it is not the intention of either party to violate any public policy or statutory or common law, and that if any sentence, paragraph, clause or combination of the same of this Agreement is in violation of the law of any state where applicable, such sentence, paragraph, clause or combination of the same shall be void in the jurisdictions where it is unlawful, and the remainder of such paragraph and this Agreement shall remain binding on the parties to make the covenants of this Agreement binding only to the extent that it may be lawfully done under existing applicable laws.

(Non-Solicitation Agreement § 6) (emphasis added).

Most importantly, paragraph 8 specifies that New Mexico's law will apply to the agreement:

> Governing Law. **This Agreement shall be governed by and construed in accordance with the** substance [sic] **laws of the State of New Mexico** without giving effect to the principles of conflict of law thereof.

(Non-Solicitation Agreement § 8) (emphasis added).

On October 13, 2009, the Plaintiff expressed to the Defendant his plans to leave his current employment and to become self-employed as an insurance broker, apparently intending to take some of his clients with him. On October 15, 2009, the Defendant, through its counsel, sent a letter to the Plaintiff threatening legal proceedings and demanding that the Plaintiff cease

forming an insurance brokerage company and abide by all of the restrictions in the Non-Solicitation Agreement. The Defendant also warned that the Plaintiff's actions could warrant legal action against him for a breach of his duty of loyalty. In response, the Plaintiff contended that the Non-Solicitation Agreement was not enforceable and that he had not breached a duty of loyalty.

On October 28, 2009, the Plaintiff filed a complaint in this Court seeking a declaratory judgment that the non-solicit and non-compete clauses in the Non-Solicitation Agreement were not enforceable and that he had not violated his duty of loyalty to the Defendant. The Defendant filed an Answer with Counterclaims on November 25, 2009 alleging breach of duty of loyalty, breach of contract, misappropriation of trade secrets, and tortious interference with prospective business advantage. On February 22, 2010, Plaintiff filed this Motion for a Determination of Questions of Law seeking a determination that Colorado law should apply to the enforceability and construction of the Non-Solicitation Agreement, as well as the other claims and counterclaims, despite the choice of law provision designating New Mexico law as binding upon the agreement. For the reasons given below, I grant the Plaintiff's motion.

III.  ANALYSIS

  A.  Law Governing Claims Not Pertaining to the Non-Solicitation Agreement

The parties agree that Colorado law should apply to the Defendant's counterclaims for breach of duty of loyalty, misappropriation of trade secrets, and tortious interference with contract and/or prospective business advantage. I concur and grant the motion with regard to these claims, ruling that Colorado law applies.

B. <u>Law Governing the Non-Solicitation Agreement</u>

Concerning the Non-Solicitation Agreement, the Plaintiff asks that I disregard the choice of law provision contained within the agreement and apply Colorado law to its construction and enforcement. Plaintiff argues that Colorado law should apply because the agreement implicates Colorado's fundamental policy against non-compete and non-solicitation agreements, that policy would be violated by applying New Mexico law, and Colorado has a materially greater interest to the resolution of the dispute. The Defendant contends, however, that the choice of law provision should be upheld because New Mexico's policy regarding non-compete and non-solicitation agreements is compatible with Colorado's and because there is no conflict between the laws, the choice of law provision should bind the interpretation of the Non-Solicitation Agreement. For the reasons stated below, I agree with the Plaintiff that Colorado law should apply.

The law of the forum state controls choice of law determinations. *Vandeventer v. Four Corners Elec. Co.,* 663 F.2d 1016, 1017 (10th Cir. 1981); s*ee also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Colorado has adopted Restatement (Second) of Conflict of Laws § 187(2) (1971) with regard to choice of law provisions, which reads: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied... unless... (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Hansen v. GAB Bus. Servs., Inc.,* 876 P.2d 112, 113 (Colo. App.1994).

In order to rule that Colorado law controls the interpretation of the Non-Solicitation Agreement, I must find that (1) Colorado law would apply if there were no choice of law provision in the agreement, (2) application of the law of New Mexico would be contrary to a fundamental policy of Colorado, and (3) Colorado has a materially greater interest than New Mexico in the determination of the enforceability of the Non-Solicitation Agreement. I will address these issues in that order.

Colorado utilizes a "most significant relationship" test in contract actions to determine which state's law ought to apply, as outlined in Restatement (Second) of Conflict of Laws §188(2) (1971). *Wood Bros Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372-73 (Colo. 1979). The most significant relationship test contains five factors to consider when making a choice of law determination:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id*. Here, these factors support a finding that Colorado has the "most significant relationship" to the contract. The Plaintiff signed the Non-Solicitation Agreement in Colorado, and it concerned employment in Colorado to service Colorado customers. Plaintiff is a Colorado resident and has been since the inception of his employment with the Defendant. Talbot was at that time a

New Mexico corporation. It is unclear where Talbot signed the agreement.[2] Weighing these considerations, I find that Colorado has the most significant relationship to the contract. Thus, Colorado law would apply absent a choice of law provision.

Next, I turn to whether the application of New Mexico law would be contrary to a fundamental policy of Colorado. The policy at issue must be substantial, and application of another state's law must lead to a contrary result in violation of the forum state's policy. *Hansen,* 876 P.2d at 113*; Pirkey v. Hospital Corp. of Am.,* 483 F.Supp. 770, 774-75 (D. Colo. 1980). Initially, I consider whether Colorado's policy regarding non-compete and non-solicitation agreements is strong enough to be considered fundamental. Colorado has a clear public policy against agreements not to compete. *DBA Enterprises, Inc. v. Findlay*, 923 P.2d 298, 302 (Colo. App.1996) ("Covenants not to compete... are contrary to the public policy of Colorado and are void"). Such covenants are facially void, rather than voidable, unless the agreement fits into a statutory exception. *Management Recruiters of Boulder*, *Inc.*, *v. Miller,* 762 P.2d 763, 765 (Colo. App.1988). Under Colorado law, an agreement not to solicit customers is tantamount to an agreement not to compete. *Phoenix Capital*, *Inc. v. M. Dowell*, 176 P.3d 835, 844 (Colo. App. 2007) ("The core policy underlying unenforceability of non-competition provisions is a prohibition on the restraint of... the right to make a living. In order to make a living, the former employee needs to be free to solicit"). Prior courts have found Colorado's policy against non-competes to be sufficiently substantial to be "fundamental" for the purposes of § 187(2). *King v. PA Consulting Group, Inc.*, 485 F.3d 577, 586 (10th Cir. 2007); *Haggard v. Synthes Spine,* 2009 WL 1655030, *2-4 (D. Colo. June 12, 2009); *Xantrex Technology, Inc. v.*

---

[2]Both parties fail to address the specific circumstances under which Talbot signed the agreement.

*Advanced Energy Indus., Inc.,* 2008 WL 2185882, *10-11 (D. Colo. May 23, 2008). I see little reason to question this determination given the strong stance that Colorado has adopted and affirm that Colorado's policy regarding non-compete agreements is fundamental under § 187(2).

Having found Colorado's policy to be fundamental, I next determine whether applying New Mexico law would be contrary to that policy. Defendant argues that both New Mexico and Colorado allow for the protection of trade secrets through non-compete restrictions, and for that reason the laws do not conflict. This argument misses the point. The two states adopt entirely different attitudes towards non-compete and non-solicitation agreements, and in this instance the application of the different laws would lead to divergent results.

As has been stated above, Colorado has a strong policy against the validity of non-compete and non-solicitation agreements. *DBA Enterprises*, 923 P.2d at 302. Such agreements are facially void unless they are narrowly drawn to fit into the statutory exceptions. *Management Recruiters,* 762 P.2d at 765. New Mexico law, in contrast to Colorado, is generally receptive to non-compete and non-solicitation agreements and only requires that the agreements serve a legitimate purpose and that the restrictions be reasonable. *Lovelace Clinic v. Murphy,* 417 P.2d 450, 453 (N.M. 1966); *Campbell v. Millennium Ventures, LLC,* 55 P.3d 429, 434 (N.M. Ct. App. 2002).

Colorado and New Mexico's differing approaches to non-compete agreements are quite similar to the approaches analyzed by the 10th Circuit in *King*, 485 F.3d 577. In *King*, the 10th Circuit examined both Colorado and New Jersey law with respect to non-compete provisions. The *King* court found that New Jersey's law regarding non-compete provisions was contrary to Colorado's. 485 F.3d at 586. In describing New Jersey law, the court said, "courts will enforce

a noncompete agreement that 'protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public.'" *King,* 485 F.3d at 586 (quoting *Solari Indus. v. Malady,* 55 N.J. 571, 264 A.2d 53, 56 (1970)). After reviewing Colorado's statute regarding non-compete agreements, the court remarked "[a]lthough [Defendant] argues that these provisions are essentially equivalent, they are plainly not. New Jersey will enforce noncompete agreements except under specified conditions in which they are deemed unreasonable. Colorado's default is just the opposite: [sic] It will not enforce noncompete agreements unless they fall within a few narrowly-defined circumstances." *Id.* Here, the same can be said for New Mexico and Colorado. Colorado's default is that non-solicitation and non-compete provisions are invalid; New Mexico's default is that they are valid even if created to restrict competition.

Defendant argues that the instant situation is more analogous to *Xantrex*, in which I ruled that British Columbian laws regarding non-compete provisions were not contrary to Colorado's laws. 2008 WL 2185882, at *12. However, unlike the present situation, the law in British Columbia was quite similar to that of Colorado's: "[b]oth Colorado and British Columbia have a strong presumption against non-compete agreements. Both Colorado and British Columbia closely examine both the scope and duration of the noncompete agreement." *Id.* The present situation is not at all comparable. New Mexico has no presumption against non-compete agreements and does not appear to have similar standards concerning the scope of such agreements. *Compare Nutting*, 106 F. Supp. 2d at 1126-27 (invalidating under Colorado law a non-compete without geographic limitations as unnecessary and unreasonable); *Campbell,* 55 P.3d at 430, 434 (enforcing under New Mexico law, without discussion, a non-

compete without geographic limitations).

The Defendant also asks that I follow *American Express Financial Advisors, Inc. v. Topel*, which found that applying Minnesota law regarding non-compete agreements would not be contrary to a fundamental policy of Colorado. 38 F. Supp. 2d 1233, 1238-39 (D. Colo. 1999). However, I find the description of Minnesota law in that opinion too cursory for me to draw any conclusions or apply to the issues at hand. *Id.*

Colorado's law regarding non-compete provisions is clearly not compatible with that of New Mexico. Still, if the two distinct sets of law would reach the same result in the instant case, it would not be contrary to Colorado's policy to apply the law of New Mexico. However, in this case they do not reach the same result on an aspect of the Non-Solicitation Agreement that is central to the dispute.

In Colorado, non-solicitation agreements such as those at issue here are assessed under the statute concerning non-compete agreements. *Phoenix*, 176 P.3d at 844. This statute states: "[any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void..." CHRIS § 8-2-113(2). The only exception that the Plaintiff argues might be applicable in the instant case is the protection of trade secrets, which is excepted by statute. *Id.* ("this subsection (2) shall not apply to... [any contract for the protection of trade secrets").

I need not decide the precise contours of the ways that this exception would function here. What constitutes a trade secret in a particular situation is a question of fact. *Gates Rubber Co. v. Banco Chemical Indus., Ltd.,* 9 F.3d 823, 848 (10th Cir. 1993); *Nutting v. RAM Southwest, Inc.*, 106 F. Supp. 2d 1121, 1126 (D. Colo. 2000). At this point it would be

premature to decide whether the particular kinds of information at issue here are or are not "trade secrets" that may be contractually protected. It is enough to say that the scope of the Non-Solicitation Agreement, as written, is not within Colorado's trade secrets exception.[3] Paragraph 3 of the Non-Solicitation Agreement in no way specifies what information or knowledge may or may not be used to solicit business from the Defendant's customers – it is a total prohibition. Under the agreement, Plaintiff may not "re-write or divert" a customer away from the Defendant even if the Plaintiff did so using public knowledge that was in no way obtained through the Plaintiff's employment with the Defendant. Such a far-reaching restriction is beyond the trade secrets exception and is more akin to a generic non-compete agreement, which is void under Colorado law. *See Mule v. J's Courier Serv., Inc.,* 739 P.2d 889, 892 (Colo. App. 1987) ("Only confidential information acquired during the course of employment may be protected.... Information already known to competitors or readily ascertainable elsewhere cannot be protected as confidential") (citations omitted) *rec'd. on other grounds* 771 P.2d 486 (1989). While the agreement cites the protection of trade secrets as one of its purposes, it is not the invocation of one of the exceptions but rather its substantive application that matters. *King,* 485 F.3d at 587. In this case, the provisions of the Non-Solicitation Agreement do not fit within the trade secrets exception, and as a result at least one important clause of the agreement would not be enforceable under Colorado law. If this clause were upheld by New Mexico, the laws would substantially conflict with regard to the enforceability of the Non-Solicitation Agreement.

---

[3]There are other potential problems with the Non-Solicitation Agreement under Colorado law that I do not develop here, such as the boundless geographic scope of the agreement. *See Nutting*, 106 F. Supp. 2d at 1126-27.

As has been stated above, New Mexico only requires that non-compete agreements serve a legitimate purpose and that the restrictions be reasonable. *Lovelace,* 417 P.2d at 453; *Campbell,* 55 P.3d at 434. It appears these lax requirements have been met in this instance for the portion of the Non-Solicitation Agreement that prohibits re-writing or diverting the Defendant's clients. Eliminating or restricting competition is one of the legitimate purposes recognized by New Mexico, as long as the restrictions are reasonable. *Id.* Neither party provided a case in which trade secrets was explicitly held to be one of the legitimate purposes that may sustain a non-compete or non-solicitation agreement in New Mexico, but I see no reason why it would not be a valid justification given the deferential attitude of New Mexico law. New Mexico has upheld a non-compete and non-solicitation agreement between an insurance company and an employee that is nearly identical to the one in dispute between the parties. *Manuel Lucan Ins., Inc. v. Jordan*, 673 P.2d 1306, 1309 (N.M. 1983). Thus, New Mexico would uphold portions of the Non-Solicitation Agreement that Colorado would not, namely the prohibition on "re-waiting] or diverting]" customers. Therefore the Non-Solicitation Agreement is not enforceable under Colorado law to the extent that it would be under New Mexico law. This creates an actual conflict between the laws, and the application of New Mexico law would be contrary to a fundamental policy of Colorado.

Finally, I turn to whether Colorado has a materially greater interest than New Mexico in applying its own law to the Non-Solicitation Agreement. I find that it does. At this point in time, New Mexico has very little interest in the application of its laws to the Non-Solicitation Agreement. The Defendant is a California corporation headquartered in California with only minor connections to New Mexico. Colorado, on the other hand, is the place of the Plaintiff's

employment and his current state of residence. Given that Colorado's strong stance on non-compete agreements is motivated by a desire that all Colorado citizens have an unfettered right to make a living, *Phoenix*, 176 P.3d at 844, the fact that the Plaintiff is a Colorado citizen gives the state a strong interest in the determination of the enforceability of the Non-Solicitation Agreement. Additionally, the contract was signed in Colorado and the customers that the Plaintiff would solicit absent the restrictions in the Non-Solicitation Agreement are predominantly in Colorado. Thus, Colorado has a materially greater interest than New Mexico in the interpretation, construction, and enforceability of the Non-Solicitation Agreement.

The Plaintiff has demonstrated that the requirements of Restatement (Second) of Conflict of Laws § 187(2) have been met, and Colorado choice of law rules dictate that Colorado law should apply to the enforceability and construction of the Non-Solicitation Agreement. Thus, all of the claims of the parties and the Non-Solicitation Agreement itself will be assessed under Colorado law. Accordingly, it is therefore

ORDERED that Plaintiff's Motion for a Determination of Questions of Law filed February 22, 2010 is **GRANTED**, and Colorado law will apply to all claims and the Non-Solicitation Agreement.

Dated: June 15, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge