IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02539-WYD-MJW

JOHN JACQUAT,

Plaintiff,

v.

HUB INTERNATIONAL INSURANCE SERVICES, INC.,

Defendant.

---

**ORDER REGARDING
DEFENDANT'S MOTION TO COMPEL RESPONSES TO SECOND SET OF
DISCOVERY REQUESTS (DOCKET NO. 109)**

**AND**

**RECOMMENDATION ON
DEFENDANT HUB INTERNATIONAL INSURANCE SERVICES INC.'S MOTION FOR
SANCTIONS FOR SPOLIATION OF EVIDENCE (DOCKET NO. 68)**

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter is before the court for consideration of:  (1) Defendant's Motion to Compel Responses to Second Set of Discovery Requests (docket no. 109) and Defendant Hub International Insurance Services Inc.'s ("Defendant Hub") Motion for Sanctions for Spoliation of Evidence (docket no. 68).  The court has reviewed the subject motions, the responses (docket nos. 90 and 126), the reply (docket no. 111), and the surreply (docket no. 131) filed with leave of court (docket no. 118).  In addition, the court has taken judicial notice of the court's file and has considered applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed

makes the following findings of fact, conclusions of law, and order and recommendation.

In the Defendant Hub International Insurance Services Inc.'s Motion to Compel Responses to Second Set of Discovery Requests (docket no. 109), Defendant Hub seeks an Order from this court compelling Plaintiff Jacquat to respond to Defendant Hub's Second Set of Discovery Requests, specifically interrogatory numbers 4 and 5 and Requests for Production numbers 2, 3, 4, 7, and 8.  Defendant Hub also seeks its costs and reasonable attorney fees incurred in connection with this motion and for such other relief as this court deems just and proper.

In the Defendant Hub International Insurance Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no.68), Defendant Hub argues that sanctions should be imposed against Plaintiff Jacquat for his failure to preserve and for having destroyed material relevant evidence.  Defendant Hub seeks the following relief from this court: (1) An inference that the deleted information would have been unfavorable to Plaintiff Jacquat; (2) an order allowing Defendant Hub direct access to Plaintiff Jacquat's Yahoo e-mail account and compelling Plaintiff Jacquat to provide to Defendant Hub with his username, password, and any other information needed to access this account; (3) an order allowing Defendant Hub direct access to Plaintiff Jacquat's on-line storage accounts, including Google Apps on-line storage accounts, and compelling Plaintiff Jacquat to provide to Defendant Hub with his username, password, and any other information needed to access these accounts; (4) an order awarding Defendant Hub its fees and costs associated with Plaintiff Jacquat's spoliation of evidence, including the costs and attorney's fees associated with this motion and the fees of Defendant Hub's forensic computer expert; and, (5) such other and further relief

as this court deems just and proper.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The court finds:

1. That I have jurisdiction over the subject matter and over the parties to this lawsuit;

2. That venue is proper in the state and District of Colorado;

3. That each party has been given a fair and adequate opportunity to be heard on the subject motions (docket nos. 68 and 109);

4. That "[d]iscovery is a nondispositive matter, and magistrate judges have the authority to order discovery sanctions." Hutchinson v. Pfeil, 105 F.3d 562, 566 (10th Cir. 1997);

5. That "[t]o ensure that the expansive discovery permitted by Rule 26(b)(1) does not become a futile exercise, putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation." Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 620 (D. Colo. 2007) (citing Zubulake v. UBS Warburg, LLC, 200 F.R.D. 212, 216 (S.D.N.Y. 2003) ("the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation"));

6. That "'[s]poliation' has been defined as 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable

litigation.'" Id. (and cases cited therein);

7. That "[t]he court has inherent power to impose sanctions for the destruction or loss of evidence." Id. (and cases cited therein). "Federal courts have authority to impose a variety of sanctions for spoliation including dismissal of the action." Kokins v. Teleflex Inc., 2007 WL 4322322, *2 (D. Colo. Dec. 6, 2007) (Miller, J.). "When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: 1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." Id. (quoting Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc., 1998 WL 68879, *13 (10th Cir. Feb. 20, 1998) (unpublished)). "[T]he destruction need not be in bad faith to warrant spoliation sanctions." Id.;

8. That "[t]he movant has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it." Ernest v. Lockheed Martin Corp., 2008 WL 2945608, *1 (D. Colo. July 28, 2008);

9. That this case involves a non-solicitation agreement between Plaintiff Jacquat and Defendant Hub. Plaintiff Jacquat worked for Defendant HUB and its predecessor, Talbot Agency, Inc., as an insurance broker specializing in placing insurance for gentlemen's clubs from August 8, 2005, to October 13, 2009, at which time he

formed his own insurance brokerage business. See Complaint;

10. That on October 6, 2009, Plaintiff Jacquat submitted a resignation letter to Defendant Hub giving two weeks' notice. See Exhibit D to Defendant Hub International Insurance Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no. 68);

11. That on October 12, 2009, Plaintiff Jacquat and his immediate supervisor, Matt Coleman, met regarding Plaintiff Jacquat's departure. In essence, Mr. Jacquat told Mr. Coleman that he decided to leave Hub, that he expected his largest clients to follow him, and that he did not think the non-solicitation agreement is enforceable. Mr. Coleman informed Mr. Jacquat that if Defendant Hub thought that he was violating his duties to Hub under the non-solicitation agreement, Defendant Hub will sue him. See affidavit of Matt Coleman, Exhibit E attached to Defendant Hub International Insurance Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no. 68);

12. That Plaintiff Jacquat's last day of employment with Defendant Hub was on October 13, 2009. See affidavit of Matt Coleman, Exhibit E attached to Defendant Hub International Insurance Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no. 68);

13. That on October 15, 2009, legal counsel for Defendant Hub sent to Plaintiff Jacquat a letter by overnight mail advising him that he was bound by the non-solicitation agreement and that Plaintiff Jacquat

had other obligations to Defendant Hub, such as a duty of loyalty. The letter went on to inform Plaintiff Jacquat of **his duty to preserve evidence and that he could be sanctioned if he destroyed any relevant documents.** See Exhibit F attached to Defendant Hub International Insurance Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no. 68);

14. That Plaintiff Jacquat received the October 15, 2009, letter on October 16, 2009. See Federal Express Receipt, Exhibit G attached to Defendant Hub International Insurance Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no. 68);

15. That on October 18, 2010, Defendant Hub's forensic computer expert, Michael Horwith, of Electronic Legal LLC, analyzed a forensic image of Plaintiff Jacquat's personal laptop computer and concluded that Plaintiff Jacquat had engaged in the deliberate destruction of data stored on his computer. Horwith concluded that "Webroot" was used on Plaintiff Jacquat's computer, and one of the functions available in Webroot was a "shredder function" that deletes files and folders permanently and makes such files and folders unrecoverable. In addition, Webroot has the ability to delete internet history permanently from a computer. Mr. Horwith concluded that extensive documentation and internet history was deleted from Plaintiff Jacquat's computer on October 18, 2010. Mr.

Horwith further concluded that approximately 575 documents and internet history was deleted from Plaintiff Jacquat's computer shortly before it was imaged. See Expert Report from Horwith. On October 20, 2010, just two days after these above-listed documentation and internet history was deleted, Plaintiff Jacquat had his computer imaged by a third-party vendor and computer expert, LuciData. It should be noted that Plaintiff Jacquat's counsel, Denise D. Riley, has indicated in a letter dated July 29, 2010 (exhibit D attached to the subject motion (docket no. 109)), that the approximately 575 documents were deleted by Plaintiff Jacquat. Specifically, Ms. Riley states in her letter on page 5, second paragraph, "[t]hat is, Mr. Jacquat wanted to get rid of documents that he had worked on from home on various matters over the course of his 5 years in Hub's employment. That is the information he deleted from the computer. . .. ." On October 27, 2009, Plaintiff Jacquat filed his Complaint and this lawsuit against Defendant Hub;

16. That during Plaintiff Jacquat's deposition, he was asked the following questions and he gave the following answers:

Q. After receiving this letter [October 15, 2009 letter from Peter Donati to Jacquat], did you destroy any documents?

A. No.

Q. Did you preserve your electronic files as well as you paper

> files? Let me rephrase that. Did you preserve electronic documents as well as your paper documents after receiving this letter?
>
> A. Yes. In terms of documents that I have at my new company, they're preserved.
>
> Q. Okay. And you said you didn't destroy any documents. Did you destroy any electronic documents after receiving this letter?
>
> A. No.

See deposition transcript of Plaintiff Jacquat, docket no. 68-2, 217: 1-25; 218: 1-19;

17. That Defendant Hub's expert report shows that on October 18, 2009, a shredding program was used on Plaintiff Jacquat's personal computer and destroyed approximately 575 documents, thus making these documents impossible to retrieve. See Defendant Hub International Insurance Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no. 68) at page 4 and also see Exhibit C attached to the subject motion (docket no. 109) at pages 7-9, and 12;

18. That during Plaintiff Jacquat's deposition, he further testified, *in pertinent part*, as follows:

   a. That he admitted that he used on-line storage accounts with Google Apps in connection with his business during its start-

up phase. See deposition transcript of Plaintiff Jacquat, 227;

    b.    That he received a referral from Jeffrey Cohen, while he was employed by Defendant Hub, for an individual named "Jack Riffenbark." See Jacquat Deposition, 118: 7 through 120:11, 169:18-25;

    c.    That he had Mr. Riffenbark's contact information sent to his personal Yahoo email address because he "wasn't sure how long [he] was going to be at HUB" and that it would have been possible to do business with that client through his new business or through HUB. See Jacquat Deposition, 118: 7 through 120: 11;

    d.    That Mr. Riffenbark worked for a company called Sapphire, which also referenced Phase III of a business plan located on his personal computer. See Jacquat Deposition, 168 to 170:13;

    e.    That he used his home computer to conduct business for Hub **prior to his resignation**, in starting up Pure Risk Solutions, and for his personal affairs. See Jacquat Deposition, 113: 18-114: 4; 218:16-219:15;

19.    That a litigant's duty to preserve evidence attaches once litigation is reasonably foreseeable. <u>Smith v. Slifer Smith & Frampton/Vail Assoc's Real Estate, LLC</u>, 2009 WL 482603, *3 (D. Colo. Feb. 25,

2009). I find that Plaintiff Jacquat had a duty to preserve evidence as early as October 6, 2009 (date of Plaintiff Jacquat's letter of resignation), but no later than October 16, 2009 (date that Plaintiff received Defendant Hub's letter dated October 15, 2009). Plaintiff Jacquat admitted in his deposition that he was aware at the time of his resignation that the terms of the non-solicitation agreement restricted his solicitation of Defendant Hub's customers. See deposition transcript of Plaintiff Jacquat at 34: 15-23;

20. That Plaintiff Jacquat denies any wrongdoing and denies deleting or destroying any information from his personal computer even though Webroot, a wiping software, was used on Plaintiff Jacquat's personal computer just days before it was imaged. See Expert Report from Horwith;

21. That "the general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." Aramburu v. Boeing Co., 112 F.3d 1398, 1407 (10th Cir. 1997). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." Id.;

22. That "'bad faith' is the antithesis of good faith and has been defined in the cases to be when a thing is done dishonestly and not merely negligently. It is also defined as that which imports a dishonest

purpose and implies wrongdoing or some motive of self-interest." Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. at 635;

23. That there is no evidence upon which the court can conclude that Plaintiff Jacquat's legal counsel had knowledge of the destruction of evidence;

24. That "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction. . . . Courts must take care not to hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence, because doing so would subvert the purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction." Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 109 (2d Cir. 2002) (internal quotations omitted). "Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." Id. See Aramburu v. Boeing Co., 112 F.3d at 1407;

25. That the Defendant Hub has adduced sufficient evidence to support an inference that some of the missing data was harmful to Plaintiff

Jacquat. The court agrees with Defendant Hub that Plaintiff Jacquat's personal computer was the most important source holding Electronically Stored Information ("ESI") relevant to the matters at issue in this case. Furthermore, there is evidence that e-mail appears to have been exchanged between Plaintiff Jacquat and Jack Rienbark and perhaps between Plaintiff Jacquat and Jeffrey Cohen concerning subject trade secret information that has not been turned over to Defendant Hub and also that such trade secret information may be stored on Plaintiff Jacquat's on-line storage accounts, including Google Apps on-line storage accounts;

26. That Defendant Hub's ability to litigate its claims has been substantially prejudiced by the Plaintiff Jacquat's failure to preserve potentially relevant and responsive ESI;

27. That Plaintiff Jacquat's failure to preserve such discovery ("ESI") has forced the Defendant Hub to incur considerable additional discovery expenses;

28. That while the court finds that the destruction of evidence here, by the Plaintiff Jacquat, was the result of willfulness and bad faith, upon consideration of the circumstances presented in the instant motion and the so-called "<u>Ehrenhaus</u> factors,"[1] the extreme, severe

---

[1] "Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant, . . . (4) whether the court warned the party in advance that dismissal of the action would

sanction of a dispositive sanction, namely, dismissal (albeit tempting under the circumstances presented here) is not recommended. "Because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort." Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992) (internal quotation marks omitted). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." Id. at 921;

29. That an adverse inference instruction to the jury at trial which instructs that the jury infer that the destroyed evidence would have been unfavorable to the Plaintiff Jacquat should be permitted. In addition, Defendant Hub should be permitted to amend its Answer to add a counterclaim for exemplary damages based on the adverse inference. Furthermore, Defendant Hub should be awarded its costs and attorney fees for this motion and for the additional discovery expenses incurred as a result of the Plaintiff Jacquat's failure to preserve, including compensation for the time and expense involved in the forensic examination of the computer files; and

---

be a likely sanction for noncompliance, . . . and (5) the efficacy of lesser sanctions." Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (internal quotation marks and citations omitted).

30. That Plaintiff Jacquat's objections as outlined in Plaintiff's Response (docket no. 126) to Defendant Hub's Second Set of Discovery Requests specifically interrogatories numbered 4 and 5 and Requests for Production numbers 2, 3, 4, 7, and 8 are overruled for the reasons stated above.

**RECOMMENDATION**

**WHEREFORE**, based upon these findings of fact and conclusions of law, this court **RECOMMENDS**:

1. That Defendant Hub International Services Inc.'s Motion for Sanctions for Spoliation of Evidence (docket no. 68) be **GRANTED**;

2. That based upon the spoliation of evidence by Plaintiff Jacquat, an adverse inference jury instruction be permitted and that Defendant Hub be permitted to amend its Answer and add a counterclaim for exemplary damages based on the adverse inference;

3. That Defendant Hub shall be given direct access to Plaintiff Jacquat's Yahoo e-mail account and on-line storage accounts, including Google Apps on-line storage accounts. Plaintiff shall provide to Defendant Hub his user names, passwords, and any other information needed to access these accounts on or before **October 25, 2010**; and

4. That Defendant Hub be awarded its attorney fees and costs (including expert costs) for this motion (docket no. 68) and for the

additional discovery expenses incurred as a result of the Plaintiff Jacquat's failure to preserve, including compensation for the time and expense involved in the forensic examination of the computer files.

**NOTICE: Pursuant to Fed. R. Civ. P. 72(a), "[a] party may serve and file objections to [a magistrate judge's order] within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."**

ORDER

**WHEREFORE,** based upon these findings of fact and conclusions of law, this court **ORDERS:**

1. That Defendant Hub's Motion to Compel Responses to Second Set of Discovery Requests (docket no. 109) is **GRANTED;**

2. Plaintiff Jacquat shall fully respond to Defendant Hub's Second Set of Discovery Requests specifically interrogatories numbered 4 and 5 and Requests for Production numbers 2, 3, 4, 7, and 8, **on or before October 25, 2010;** and

3. That pursuant to Fed. R. Civ. P. 37(a)(5)(A), Plaintiff Jacquat shall pay the Defendant Hub the Defendant Hub's reasonable expenses incurred in making the motion (docket no. 109), including attorney fees and costs. The parties shall forthwith meet and confer to see if

they can agree upon the amount of reasonable expenses, including attorney fees and costs. If the parties can agree, then the parties shall file their written stipulation of reasonable expenses with the court on or before **October 25, 2010.** If the parties cannot agree, then the Defendant Hub shall have up to and including **October 25, 2010,** to file its itemized affidavit of expenses. Plaintiff Jacquat shall then have **until November 5, 2010,** to respond to Defendant Hub's itemized affidavit of expenses. If a response is filed, then Defendant Hub shall have **until November 5, 2010,** to file a reply to the response.

Done this 7th day of October 2010.

                                                BY THE COURT

                                                s/ Michael J. Watanabe
                                                MICHAEL J. WATANABE
                                                U.S. MAGISTRATE JUDGE